IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| JEFFREY M. MURPHY | ) | |
| and DANIELLE J. MURPHY, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 230234R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notice of Deficiency, dated August 24, 2022, for the

2019 tax year.  A trial was held remotely on August 9, 2023.  Ryan S. Johnson, CPA, (Johnson)

appeared on behalf of Plaintiffs.  Jeffrey Murphy (Murphy) and Johnson testified on behalf of

Plaintiffs.  Auditor, Khang Do appeared and testified on behalf of Defendant.  Plaintiffs'

Exhibits 1 to 15 and Defendant's Exhibits A to G were received into evidence.

I.  STATEMENT OF FACTS

Plaintiffs owned two properties during the 2019 tax year for which they claimed

deductions for business expenses and depreciation: one in Bend, Oregon, (Sunstone property)

and another in Oregon City, Oregon (Meadowridge property).  Defendant denied these

deductions, arguing, that Plaintiffs were not charging fair market rent (FMR) and that the

properties were treated as personal rather than for business purposes.  The court will address

each property separately.

A.      *The Sunstone Property*

Plaintiffs acquired the Sunstone property as an empty lot upon which they constructed a

3,066-square-foot, 4-bedroom 4.5-bathroom home.  Plaintiffs received a Certificate of

Occupancy in August 2018. Murphy testified that the construction cost of Sunstone was between $500,000 and $600,000 and that it was originally intended to be a short-term rental property. Plaintiffs presented a "profit and loss budget" for Sunstone, estimating rental income of $53,500 and operating costs of $35,308.

In January 2019, Plaintiffs began renting out Sunstone to friends and acquaintances by word of mouth. Between January 2, 2019 and April 7, 2019, four separate guests stayed at the property and were charged either $200 or $250 per night. Plaintiffs reported $1,900 in rental income for the year. To determine the nightly rate, Plaintiffs looked at rents in the area, including those at the Sunriver Resort. Murphy testified that the nightly rates were below the area average due to the low winter season and guests were responsible for their own cleaning and resort fees. Plaintiffs provided two comparable homes in January 2019 from VRBO in the Bend area: a 4-bedroom home listed at $225 per night, and a 2-bedroom home for $163 per night.

Plaintiffs claimed $22,738 in total expenses and depreciation for Sunstone. Murphy testified to visiting the property only a few times, primarily for cleaning and maintenance, and that the property was otherwise used as a short-term rental. On their 2019 tax return, Plaintiffs claimed cleaning and maintenance deductions of $540, which they later clarified were for snow removal in the driveway. Citing the difficulty of maintaining a property over three hours from their residence, Plaintiffs sold Sunstone in June 2019 for just over $1 million.

Defendant submitted comparable rentals for the Sunstone property, averaging $469 per night. To calculate this figure, Defendant reviewed data from multiple sources over 12 months to obtain an average nightly rate. This figure was then adjusted for the federal consumer price index (CPI) and seasonal factors to estimate a rate for 2019. Specifically, Defendant used VRBO data for weekday, two-night stays at comparable four-bedroom homes in the area from

January to December 2022. Defendant also looked at Airbnb listings for weekend stays from June to December 2022 at homes with four to seven beds which showed rents more than double what Plaintiffs charged.

B.   *The Meadowridge Property*

Plaintiffs purchased Meadowridge in 2017 and used it as their primary residence. Meadowridge is located in a gated community, on a golf course, and consists of a 5,586-square-foot main building and a 2,556-square-foot attached additional dwelling unit (ADU). The property includes amenities such as a saltwater pool, hot tub, and a sports court, all situated on just under two acres of land. The ADU has two floors: the lower floor contains two bedrooms, a bathroom, and kitchen, while the upper floor has a bedroom. Murphy testified that the upper floor of the ADU was used for his spouse's fitness business, and tenants could only access it with permission.

Beginning May 1, 2017, Plaintiffs rented a room of the lower floor of the ADU on a month-to-month basis to a tenant for $600 per month. On August 1, 2017, they added a second tenant for $450 per month. Both tenants had full access to the property, including the pool, spa, and outdoor living areas. The tenants remained on the lease until the property was sold in 2021.

Plaintiffs provided exhibits of comparable rental prices from Craigslist postings, Rentdata.org, and letters from real estate professionals. The Craigslist posts showed properties in the Portland metro and Vancouver areas offering rooms for rent ranging from $100-1900 per month. (*Id.*) Rentdata.org showed the average cost for a two-bedroom unit in Oregon was $935 per month while for the average cost in Clackamas County was $1,441. Professional opinions offered by Plaintiffs estimated a fair market price for a room to be between $500 and $700 per month.

On their 2019 tax return, Plaintiffs reported $12,600 in rental income and $256,045 in total rental expenses for the Meadowridge property, including depreciation of $194,299. Plaintiffs depreciated all 2,556 square feet of the ADU, which included the second floor.

Defendant denied Plaintiffs' rental expense deductions arguing the rent charged was below fair market rent prices for comparable three-bedroom apartments. Defendant established the fair market rent by analyzing the rental prices for three-bedroom units in Oregon City and adjusting the rates using a 9.98 percent CPI factor to account for cost differences between 2019 and 2022. Defendant found that the analysis showed fair market rent for a three-bedroom rental home to be $2,217 per month, whereas Plaintiffs received a combined $1,050 per month from both tenants. Defendant's RentData printout shows that the cost for a two-bedroom rental in Clackamas County was $1,441. Defendant denied Plaintiffs' depreciation of the Meadowridge property on the grounds that it was not an income producing property.

## II. ANALYSIS

The issues before the court are whether Plaintiffs may take business deductions for the Sunstone and Meadowridge properties, and if so, in what amounts.

A.    *General Statements of Law*

Oregon's income tax is based on federal tax provisions, absent "modifications, additions and subtractions" that do not apply here. ORS 316.048.[1] The taxpayer, as the party seeking affirmative relief, bears the burden of proof in this appeal. ORS 305.427.

A taxpayer may take a depreciation deduction for property held for the production of income pursuant to Internal Revenue Code (IRC) section 167, which recognizes the exhaustion and wear and tear of property. *Olsen v. Comm'r,* 121 TCM (CCH) 2021-41 (2021), 2001 WL

---

[1] References to the Oregon Revised Statutes (ORS) are to the 2017 version.

1259727 at *8 (US Tax Ct).  Additionally, a taxpayer may deduct all ordinary and necessary expenses paid or incurred for the production of income or the management and maintenance of property held for income generation.  26 USC § 212.  For each of the above deductions, taxpayers must demonstrate a profit motive and provide evidence of the property's use for income-producing purposes during the tax year.

B.      *Sunstone Property*

Defendant denied Plaintiffs' related deductions and depreciation for the Sunstone property on the basis it was used for personal rather than business purposes.  The court must determine whether the property was rented at fair market rent and whether Plaintiffs treated it as a business rental property.

Under IRC section 280A, a property is deemed to have been used for personal purposes unless it is rented at fair market value under the specific facts and circumstances.  *Lee v. Dept. of Rev.*, 9 OTR 447, 449 (1984).  Defendant argues that the property was rented at less than fair market rent, indicating personal use rather than an income-generating activity.

Plaintiffs' business plan was to rent Sunstone for five nights each month from January to April, at nightly rates of $200 for January to March and $250 for April.  This totals to earnings of $1,000 or $1,250 per month and for each of these months, the anticipated operating cost was $3,059.  However, they charged between $200 and $250 for nightly stays and had just four guests over this period.

Plaintiffs' evidence, including letters from a real estate professional, was not persuasive. While rental comparisons are useful, the property's amenities and values in the immediate area are crucial in determining rental value.  Given that Sunstone is a brand-new home, valued at over $1 million, the court finds it unlikely that the fair market rent would be as low as $200 to $250

per night.  Plaintiffs' profit estimates at their suggested rental value appear too optimistic, as the amounts for mortgage, taxes, and HOA dues appear unreasonably low.

When a taxpayer recognizes that they are charging below fair market rent, this undermines their claim to an income-producing activity.  *Jasionowski v. Comm'r,* 66 TC 312, 322 (1976).  In this case, Murphy's acknowledgement that they charged below fair market rent disfavors Plaintiffs.  While they claimed that the low season for the area was a factor to their pricing, the court agrees with Defendant that the area remains attractive in winter due to the popular nearby winter sports.  Therefore, the court concludes that Plaintiffs did not charge fair market rent for the Sunstone property.

A taxpayer's efforts to rent property are also indicative of whether it was treated as a business.  *See Newcombe v. Comm'r of Internal Rev.,* 54 TC 1298, 1300 (1970); *see also Robinson v. Comm'r,* 2 TC 305, 307 (1943).  Plaintiffs relied solely on word-of-mouth rentals and did not market the property as a business would.  Limited advertising to friends and family does not constitute a diligent or bona fide efforts to rent the property.  *Godard v. Dept. of Rev.,* TC-MD 210354N, 2022 WL 1043982 at *5 (finding that limited advertising to friends and family did not constitute diligent and bona fide efforts to rent the property).  Plaintiffs' lack of use of professional rental management services or of making the property available to the general public supports Defendant's claim that Sunstone was used for personal purposes.  Thus, the court finds that Plaintiffs did not treat Sunstone as a business property, and Defendant's denial of their business deductions was appropriate.

C.    *Meadowridge Property*

Defendant denied Plaintiffs' deductions and depreciation for the Meadowridge property, arguing it was used for personal instead of business purposes.  To determine whether the

property qualifies as a rental property or personal residence, the court must first assess whether Plaintiffs charged fair market rent.

Plaintiffs argued the Meadowridge property should be considered two individual room rentals, rather than a two-bedroom unit, while Defendant asserted it should be treated as at least a two-bedroom unit. The evidence showed two individual tenants occupying separate bedrooms but sharing common areas (living room, kitchen, and bathroom). Plaintiffs' decision to rent the property as individual rooms was ultimately Plaintiffs' choice. However, under property tax appraisal standards, the highest and best use of the property would be to rent the unit as a two-bedroom unit. In accordance with these standards, the court finds that the Meadowridge property should be evaluated as a two-bedroom unit.

Fair market rent is determined by comparable rental prices and by the particular "facts and circumstances." 26 USC § 280A(d)(2)(c). Plaintiffs submitted a letter from a real estate agent who used "The Way Back Machine" to view archive room rental listings on Craigslist. However, this evidence had several issues: it lacked specific parameters, covered the entire Portland metropolitan area (where location is key in real estate), and provided no property details or photos. Another letter from a real estate broker offered rent estimates between $500 and $700 per room, but the court finds this evidence lacking in sufficient detail to be persuasive.

Defendant submitted comparable rentals for studio, one-bedroom, two-bedroom, and three-bedroom rentals. However, like the Plaintiffs' evidence, most of Defendant's data covered the entire Portland metropolitan area, not Oregon City Specifically.

///

///

///

Defendant's RentData printout concludes that a two-bedroom rent would be $1,441. While the court found this data insufficient to precisely calculate fair market rent, it is persuasive that Plaintiffs were not charging fair market rent. Consequently, Plaintiffs are not eligible to deduct their expenses as business expenses.

### III.  CONCLUSION

After careful consideration, the court finds that Plaintiffs did not charge fair market rent for either of their two properties and, as such, may not deduct expenses or take depreciation. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal of Defendant's Notice of Deficiency for the 2019 tax year is denied.

_____
RICHARD DAVIS
MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.***

***This document was signed by Magistrate Richard Davis and entered on September 18, 2024.***